David B. Gray, OSB No. 842346
12275 SW 2nd Street
Beaverton, OR 97005
Telephone: (503)747-3682
Email: david@davegraylaw.com
Attorney for John Deere Construction & Forestry Co.

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Luke Frederick,<br><br>      Debtor.<br>_____<br><br>John Deere Construction & Forestry Co.,<br><br>      Plaintiff,<br> v.<br><br>Luke Frederick,<br><br>      Defendant. | Case No.18-61640-tmr7<br><br>Adversary Proceeding No.<br><br>COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT<br><br>(11 USC Sections 523(a)(2), (3), (6)) |

  This court has jurisdiction over this proceeding pursuant to 28 USC Sections 157(b)(1) and 1334(a). This is a core proceeding pursuant to 28 USC Sections 157(b)(2)(H), (I) and (J). Venue is proper pursuant to 28 USC Section 1409.

/ / /

/ / /

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT       Page 1

1.

PARTIES

Plaintiff John Deere Construction & Forestry Co. is a Delaware corporation, and is a subsidiary of Deere & Company, also a Delaware corporation, and registered to do business in the state of Oregon.

2.

Defendant is a resident of Benton County, Oregon, and filed a Petition for Relief under Chapter 7 of the US Bankruptcy Code on May 25, 2018.

FIRST CLAIM FOR RELIEF

(11 USC Section 523(a)(2))

3

On or about July 30, 2013, Defendant entered into a retail installment contract - security agreement ("Agreement") with Plaintiff's assignor, Pape Machinery, Inc. for the purchase of a John Deere Model 2154D Logger-Excavator, S/N 210628 ("Collateral").

4.

Pursuant to the terms of the Agreement, Defendant was to make installment payments each in the amount of $5,015.94 with four such monthly payments beginning August 30, 2013; then 10 such monthly payment beginning February 2014; then 10 such monthly payment beginning February 2015; then 10 such monthly payment beginning February 2016; then 10 such monthly payment beginning February 2017; and then 6 such monthly payment beginning February 2018 (This payment plan was intended to allow Defendant to skip payments in December and January every year).

/ / /

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT                Page 2

5.

As security for the Agreement, Defendant gave Plaintiff's assignor a security interest in the Collateral, which Defendant sold, including the proceeds on any insurance. Defendant was aware or should have been aware that any attempt to sell or to give somebody else an interest in the Collateral would be a breach of the Agreement and that any such attempt entitled Plaintiff's assignor to accelerate the balance remaining due, or to retake the Collateral or pursue other legal remedies. A copy of the Agreement is attached as Exhibit 1.

6.

Plaintiff's assignor assigned the Agreement to Plaintiff on August 5, 2013. The assignment appears on page 6 of Exhibit 1.

7.

This is not a consumer transaction.

8.

As of May 10, 2018, Defendant has a remaining balance due of $72,664.29, plus pre-judgment interest at the rate of 3.90% per annum from May 10, 2018, and pursuant to the Agreement, Plaintiff is also entitled to recover its reasonable its attorney fees. The reasonable value of the Collateral when Defendant sold it to a third party on or about October 4, 2016 was $150,000.

9.

Plaintiff is informed, and believes thereon, that Defendant sold the Collateral to J&J Logging on October 4, 2016, prior to petitioning for bankruptcy and deliberately omitted Plaintiff from notice of the sale to avoid Plaintiff's attempts to recover the Collateral and the balance due on the account.

10.

Defendant's transfer of the Collateral, and intentional omission of Plaintiff from notice of

sale of the Collateral, along with his failure to list Plaintiff among his creditors in his chapter 7 bankruptcy, constitutes false pretenses under 11 USC Section 523 (a)(2).

11.

Due to Defendant's actions, Plaintiff has suffered damages in the amount of $72,664.29, plus pre-judgment interest at the rate of 3.90% per annum from May 10, 2018, and its reasonable attorney fees incurred in the present action and future fees associated with any recovery and sale of the wrongfully transferred collateral.

12.

Pursuant to 11 USC Sections 523(a)(2), this court should hold Defendant's debt to Plaintiff nondischargeable.

SECOND CLAIM FOR RELIEF

(11 USC Section 523(a)(3))

13.

Plaintiff refers to Paragraphs 1 through 10 and 12 above, and by such reference incorporates the same herein.

14.

Defendant was aware of the debt to Plaintiff, intentionally misled Plaintiff and failed to notify Plaintiff of his bankruptcy petition and the sale of the Collateral in order to avoid disclosure of the location of the Collateral or acceleration of the debt.

15.

Pursuant to 11 USC Sections 523(a)(3), this Court should hold Defendant's debt to Plaintiff nondischargeable.

## THIRD CLAIM FOR RELIEF

## (11 USC Section 523(a)(6))

16.

Plaintiff refers to paragraphs 1 through 10 and 12 above, and by such reference incorporates the same herein.

17.

Defendant knew or should have known that transfer of possession and control of the Collateral to a third party would cause damage to Plaintiff.

18.

Defendant's acts constitute willful and malicious injury by the Defendant to Plaintiff and the property of Plaintiff.

19.

Pursuant to 11 USC Sections 523(a)(6), this Court should hold Defendant's debt to Plaintiff nondischargeable.

WHEREFORE, Plaintiff John Deere Construction & Forestry Co. prays for judgment against Defendant as follows:

A. On Plaintiff's First, Second, and Third Claims, for a judgment against Defendant for $72,664.29, plus pre-judgment interest at the rate of 3.90% per annum from May 10, 2018, and reasonable attorney fees incurred in the present action and future fees associated with any recovery and sale of the wrongfully transferred Collateral.

/ / /

/ / /

B. For Plaintiff's costs and disbursements incurred herein and for such other relief as the court deems appropriate.

Dated: August 23, 2018 /s/David B. Gray
David B. Gray, OSB 842346
Attorney for John Deere Construction
& Forestry Co.



**JOHN DEERE FINANCIAL**

RECEIVED AUG 0 7 2013
JOHN DEERE FINANCIAL

Application ID: 11506030
Version Number: 7
**FIXED RATE CONTRACT**
C&F Business or Commercial Use

## RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT

Contract Begin Date : 07/30/2013

| SELLER'S NAME AND ADDRESS | DEALER NUMBER | PHONE NUMBER |
|---|---|---|
| PAPE MACHINERY, INC.<br>460 N DANEBO AVE<br>EUGENE, OR 97402 | 17-7945 | 541-484-5424 |

| BORROWER'S NAME AND PHYSICAL ADDRESS | BORROWER'S TAX ID NUMBER | BORROWER'S PHONE NO. | TYPE OF BUSINESS |
|---|---|---|---|
| FREDERICK TIMBER, LLC<br>27183 BUNDY RD<br>CORVALLIS, OR 97333-9415 | **-*** | 541-968-1261 | Limited Liability Company |
| BORROWER RESIDES IN (County/State)<br>BENTON, OR | | BORROWER AGREES TO KEEP GOODS IN (County/State)<br>LANE, OR | |
| NAME AND TITLE OF SIGNING OFFICER<br>LUKE FREDERICK - Member | | | |

| CO-BORROWER'S NAME AND PHYSICAL ADDRESS | CO-BORROWER'S SOC. SEC. NUMBER | CO-BORROWER'S PHONE NO. | TYPE OF BUSINESS |
|---|---|---|---|
| LUKE FREDERICK<br>25310 BULL RUN<br>MONROE, OR 97456-9788 | ***-**-: | 541-968-1261 | |

**1. Parties.** This Retail Installment Contract ("Contract") is entered into between Seller ("we", "us" or "our") and the buyer(s) indicated above ("you" or "your"). If more than one buyer is indicated, each buyer shall be jointly and severally liable for all of the obligations under this Contract.

**2. Loan.** Having been quoted both a cash sale price and a time sale price for the equipment and/or services described below (the "Equipment"), you have elected to purchase the Equipment from us for that time sale price under the terms set forth in this Contract. All attachments and accessories itemized on this Contract and all replacements, parts and repairs to the Equipment shall form part of the Equipment.

**3. Installment Payments.** In addition to any down payment, you agree to pay us the Amount Financed, together with finance charges from the Date Finance Charge Begins, at the Annual Percentage Rate, by remitting each of the Installment Payments on or before the due dates indicated. Any amounts applied to this Contract will be applied first to any late charges, any charges for dishonored checks and any other fees or costs due under this agreement, then to finance charges, computed on the date the payment is received and the remainder to the Amount Financed. You agree that your payments will be applied as of the date of receipt if received by 11:00 a.m. Central Time Monday through Friday (otherwise next business day); but if payment is not accompanied by the payment stub, is not in the envelope we provided, includes other items such as other checks, staples or paper clips, or is not received at that location, credit may be delayed up to five days. This Contract is not accepted by us until we sign it, even if you have made a payment to us. You agree to remit to us the Installment Payments and all other amounts when due and payable each Billing Period, even if we do not send you a bill or an invoice. YOUR PAYMENT OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL, AND ARE NOT SUBJECT TO CANCELLATION, REDUCTION OR SETOFF FOR ANY REASON WHATSOEVER. For any scheduled payment which is not received by its due date, you agree to pay us interest on the unpaid amount at a rate of 20% per annum on that scheduled payment, but in no event more than the maximum lawful rate, from the due date until paid. However, if the Seller's place of business is in Minnesota, the late charge will be the lesser of 5% of the past due amount and $6.76 and no late charge will be due if the Seller's place of business is in West Virginia and the Amount Financed above is $45,000 or less. Restrictive endorsements on checks you send to us will not change or reduce your obligations to us. We will not lose any rights if we accept late or partial payments or delay enforcing our rights under this Contract. If a check or electronic payment authorization you give us is dishonored upon first presentment, you agree to pay us a fee of $25.00, or the maximum amount permitted by law, whichever is less. No such fee will be due if the Seller's place of business is in Minnesota, or if the Seller's place of business is in West Virginia and the Amount Financed above is $45,000 or less. Also, if the Seller's place of business is in California, you agree to pay us a fee of $35.00 for each subsequent check passed on insufficient funds, or the maximum amount permitted by law, whichever is less. Installment Payments and other payments, including

THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE

| DOC8002 | 8/2/2013 | Settlement Nbr: 11506030 | Equipment Type: Construction & Forestry Commercial | | Page 1 of 6 |
|---|---|---|---|---|---|
| Revision Date: September 2011 | | Application ID: 11506030 | Version Number: 7 | Customer Initials: LF | |

Exhibit 1
Page 1 of 6



Case 18-61640-tmr7    Doc 22    Filed 08/23/18

proceeds of insurance or any sale of the Equipment, may be applied, at our discretion and in spite of any instructions you may provide, to any obligation you may have to us or any assignee of this Contract or any affiliate of that assignee. If the total of all payments made by you exceeds the total of all amounts due under this Contract by less than $25.00, we may retain such excess. However, if the Seller's place of business is in Minnesota, we will not retain more than $1.00.

| EQUIPMENT PURCHASED | | | | | |
|---|---|---|---|---|---|
| QTY. | NEW/ USED | MFR. | MODEL | EQUIPMENT DESCRIPTION | AMOUNT |
| 1 | NEW | JD | 2154 | 2154D Logger-Excavator | $267,000.00 |
| PRODUCT ID NO. 1FF2154DCD0210628 - JDLINK ULTIMATE, TIER III ENGINE, 8' 7" HI-WIDE UNDERCARRIAGE, 28" DOUBLE SEMI GROUSER SHOES, SIDE ENTRY FORESTRY CAB, 36' LIVE HEEL LOG LOADER FRONT, BOOM AND CYLINDER GUARD, JEWELL 52" GRAPPLE PM47769 | | | | | |

| TRADE-IN and CASH DOWN PAYMENT | | | | | |
|---|---|---|---|---|---|
| QTY. | MFR. | MODEL | DESCRIPTION OF TRADE-IN (From Purchase Order) | PRODUCT ID NO. | AMOUNT |
| | | | | TOTAL TRADE-IN: | $0.00 |
| | | | | CASH DOWN PAYMENT: | $40,125.00 |
| | | | | RENTAL APPLIED: | $0.00 |
| | | | | TOTAL TRADE-IN PLUS CASH DOWN: | $40,125.00 |

### INSTALLMENT PAYMENTS

DATE FINANCE CHARGE BEGINS: July 30, 2013

The first Installment Payment Due Date is August 30, 2013 and each successive Installment Payment is due on the same day of the Month thereafter, (the "Billing Period"), unless otherwise provided below:

| NUMBER OF PAYMENTS | AMOUNT OF EACH PAYMENT | DUE DATE |
|---|---|---|
| 4 | $5,015.94 | August 30, 2013 |
| 10 | $5,015.94 | February 28, 2014 |
| 10 | $5,015.94 | February 28, 2015 |
| 10 | $5,015.94 | February 29, 2016 |
| 10 | $5,015.94 | February 28, 2017 |
| 6 | $5,015.94 | February 28, 2018 |

The amounts shown below as Finance Charge, Total of Payments and Total Sale Price are estimates based upon the assumption that payments will be made on the scheduled payment due date according to the Installment schedule. The actual Finance Charge, Total of Payments, and Total Sale Price may vary depending upon the early or late payment of scheduled installments.

| ITEMIZATION OF AMOUNT FINANCED | | |
|---|---|---|
| SALES TAX (Paid to Govt. Agencies) | | $0.00 |
| CASH PRICE (Including Tax) | 1 | $267,000.00 |
| TOTAL DOWN PAYMENT (Sum of Trade-In & Cash Down Payment) | 2 | $40,125.00 |
| UNPAID BALANCE OF CASH PRICE (The amount credited to your account with us) | 3 | $226,875.00 |
| INSURANCE (Physical Damage Paid to Insurance Companies) | 4 | $0.00 |
| ORIGINATION FEES | 4A | $470.00 |
| OFFICIAL FEES (Paid to Public Officials) | 5 | $30.00 |
| AMOUNT FINANCED (Lines 3, 4, 4A, 5 & 5A (If Applicable) ) The amount of credit provided to you. | 6 | $227,375.00 |
| FINANCE CHARGE (Based on Line 6) The dollar amount the credit will cost you. | 7 | $23,422.00 |
| TOTAL OF PAYMENTS (Lines 6 & 7) The amount you will have paid after you have made all payments as scheduled. | 8 | $250,797.00 |
| ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate) | | 3.90% |
| TOTAL SALE PRICE (Lines 1, 4, 4A, 5, 5A (If Applicable), & 7) The total price of your purchase on credit, including the Total Down Payment of $40,125.00. | | $290,922.00 |

4. Prepayment. You may prepay your obligations under this Contract in full at any time by paying the unpaid principal balance and any earned and unpaid finance charges. The unpaid principal balance includes any origination fee. If applicable law requires us to refund any of the origination fee upon prepayment, you agree that we may retain an amount equal to that amount as a prepayment penalty.

5. Security Interest; Missing Information. You grant us, and any assignee of this Contract or any affiliate of that assignee, a security interest in the Equipment (and all proceeds thereof) to secure all of your obligations under this Contract and any other obligations which you may have to us or any assignee of this Contract of any affiliates of that assignee, at any time and you agree that any security interest you have granted or hereafter grant to us or any assignee of this Contract or any affiliate of that assignee shall also secure your obligations under this Contract, however, if the contract was signed in Oregon and the equipment includes a trailer, you do not grant us a security interest in that trailer. You agree that any assignee of this Contract may act as agent for its affiliates and its affiliates may act as agent for that assignee, in order to perfect and realize on any security interest described above. Upon receipt of all amounts due and to become due under this Contract, we will release our security interest in the Equipment (but not the security interest for amounts due an affiliate of an assignee), provided no event of default has occurred and is continuing. You agree to keep

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| DOC8002 | 8/2/2013 | Settlement Nbr: 11506030 Application ID: 11506030 | Equipment Type: Construction & Forestry Commercial Version Number: 7  Customer Initials: LF | Page 2 of 6 |
|---|---|---|---|---|

Revision Date: September 2011



Exhibit 1
Page 2 of 6

the Equipment free and clear of all liens and encumbrances, except those in favor of us, any assignee of this Contract and its affiliates as described above, and to promptly notify us if a lien or encumbrance is placed or threatened against the Equipment. You irrevocably authorize us, at any time, to (a) insert or correct information on this Contract, including your correct legal name, serial numbers and Equipment descriptions; (b) submit notices and proofs of loss for any required insurance; (c) endorse your name on remittances for insurance and Equipment sale or lease proceeds; and (d) file a financing statement(s) which describes either the Equipment or all equipment currently or in the future financed by us. You agree that we can access any information regarding the location, maintenance, operation and condition of the Equipment and you irrevocably authorize anyone in possession of that information to provide all of that information to us upon our request. You also agree to not disable or otherwise interfere with any information gathering or transmission device within or attached to the Equipment.

6. Equipment Maintenance, Operation and Use. You agree to (a) USE THE EQUIPMENT ONLY FOR AGRICULTURAL, BUSINESS OR COMMERCIAL PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES; (b) operate and maintain the Equipment in accordance with all (1) applicable laws, ordinances and regulations, (2) manuals and other instructions issued by the manufacturer(s) and supplier(s), and (3) insurance policy terms and requirements; (c) perform (at your expense) all maintenance and repairs necessary to keep the Equipment in as good a condition as when delivered to you, reasonable wear excepted; (d) allow us and our agent(s) to inspect the Equipment and all of your records related to its use, maintenance and repair, at any reasonable time; and (e) not permit the Equipment to be used by, or to be in the possession of, anyone other than you or your employees.

7. Insurance. You agree, at your cost, to maintain all-risk insurance coverage with respect to the Equipment for no less than its full replacement value, naming us (and our successor and assigns) as sole loss payee. You may choose who provides that insurance, but that insurance must be with an insurer that is authorized to do business in your state or an eligible surplus lines insurer and policies acceptable to us. Your obligation to insure the Equipment continues until all your other obligations under this Contract are satisfied. Each insurance policy must provide that (1) our interest in the policy will not be invalidated by any act, omission, breach or neglect of anyone other than us; (2) the insurer will give us at least 30 days' prior written notice before any cancellation of, non-renewal of, or material change to, the policy; and (3) such coverage shall be primary over any insurance purchased by us (or our affiliates).

Unless you provide us with evidence of the required insurance coverages, we may, but are not required to, purchase insurance, at your expense, to protect our interests in the Equipment and charge you an insurance fee on which we may make a profit. This insurance may not (1) protect your interests; or (2) pay any claim that you make or any claim that is made against you in connection with the Equipment. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained the insurance required by this Contract. THE COST OF THE INSURANCE MAY BE MORE THAN THE COST OF THE INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. THE COVERAGES OF THAT INSURANCE MAY BE DIFFERENT FROM THE COVERAGES OF INSURANCE YOU MAY BE ABLE TO OBTAIN ON YOUR OWN. You agree to pay us the cost of any insurance plus a $150 insurance placement and service fee. You will immediately pay that amount to us or we may, at our sole discretion, add that cost to the Account Balance and increase the required Installment Payments accordingly.

If a default occurs, you authorize us to cancel the insurance on the Equipment and apply any returned premiums to the Account Balance.

If the cost of the insurance was included in the Amount Financed, that insurance will terminate (a) if your debt to us is discharged, (b) if we release our security interest in the Equipment, (c) if a default occurs and we cancel the insurance, (d) if the Equipment is repossessed, (e) if the Floater Policy under which you purchased that insurance terminates, or (f) on the due date of the final scheduled Installment Payment.

8. Loss or Damage. Until all of your obligations under this Contract are satisfied, you are responsible for all risk of loss and damage, loss, theft, destruction or seizure of the Equipment (an "Event of Loss"). You must promptly notify us of any Event of Loss. If the Equipment can be repaired or replaced, you agree to promptly repair or replace the Equipment, at your cost, and the terms of this Contract will continue to apply. If the Equipment cannot be repaired or replaced, you agree to immediately pay us the Account Balance. Upon receipt of the Account Balance, we will release our security interest in the Equipment. All insurance proceeds must be paid directly to us, and we may apply any excess insurance proceeds to any other amounts you owe us or any assignee of this Contract or any affiliate of that assignee.

9. Default. We may determine you to be in default if: (a) you fail to remit to us any Installment Payment or other payment when due; (b) you breach any other provision of this Contract; (c) you remove any Equipment from the United States; (d) a petition is filed by or against you or any guarantor under any bankruptcy, attachment, execution or insolvency law or you or any such guarantor make an assignment for the benefit of creditors; (e) a default occurs under any other agreement between you (or any of your affiliates) and us (or any assignee of this Contract or any affiliate of that assignee); (f) you or any guarantor merges with or consolidates into another

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| 8/2/2013 | Settlement Nbr: 11506030 | Equipment Type: Construction & Forestry Commercial | | |
|---|---|---|---|---|
| DOC8002 | Application ID: 11506030 | Version Number: 7 | Customer Initials: LF | Page 3 of 6 |

Revision Date: September 2011



Exhibit 1
Page 3 of 6

Case 18-61640-tmr7 Doc 22 Filed 08/23/18

entity, sells substantially all its assets, dissolves or terminates its existence, or (if an individual) dies or becomes incompetent; (g) you fail to maintain the insurance required by this Contract; or (h) if for any reason, we deem the debt or the Equipment to be insecure. Time is of the essence under this Contract.

10. Remedies. If we determine that you are in default, we may do one or more of the following: (a) recover from you, AS LIQUIDATED DAMAGES FOR LOSS OF BARGAIN AND NOT AS A PENALTY, the Account Balance as of the date of such default, without presentment or demand or notice of intent to declare all of that indebtedness immediately due and payable (b)declare any other agreements between you and us in default; (c) terminate any of your rights (but none of your obligations) under this Contract and any other agreement between you and us (or any assignee of this Contract or any affiliate of that assignee); (d) require you to deliver the Equipment to us in the manner outlined below, or take possession of the Equipment; (e) lease or sell the Equipment or any portion thereof at a public or private sale; (f) apply the net proceeds we receive from any sale, lease or other disposition of the Equipment (after deducting all of our costs and expenses) to your obligations under this Contract, with you remaining liable for any deficiency; (g) require you to reimburse and indemnify us for all losses, claims, damages and expenses of any kind or nature whatsoever incurred in connection with the Equipment or this Contract and/or the enforcement of our remedies hereunder including, without limitation, repossession, repair and collection costs, damage awards, attorneys' fees and court and bankruptcy fees and costs; (h) exercise any other remedy available at law or in equity; and (i) take on your behalf (at your expense) any action required by this Contract which you fail to take. These remedies are cumulative, are in addition to any other remedies provided for by law, and may be exercised concurrently or separately. Any failure or delay by us to exercise any right shall not operate as a waiver of any other right or future right. In no event will the costs and expenses referred to in this section be more than those allowed by law. If we determine that you are in default, all Equipment must be delivered to the place designated by us, at your expense and in satisfactory condition, along with all use, maintenance and repair records. Equipment is in satisfactory condition if it is in as good a condition as when the Equipment was delivered to you, reasonable wear excepted, as determined by us in our sole discretion.

11. Assignment. You will not assign, pledge or otherwise transfer any of your rights or interests in this Contract or any Equipment without our prior written consent. Any assignment without our consent will be void. We may assign this Contract or our interest in the Equipment at any time without notice to you and without your consent. We may provide information about you to any prospective assignee or participant. You agree not to assert against our assignee any claims, offsets or defenses which you may have against us.

12. Representations and Warranties. You represent, warrant and covenant to us so long as this Contract is in effect, that: (a) you will not change your name without giving us at least 30 days' prior written notice; (b) each document you sign and deliver to us is duly authorized, executed and delivered by you, and is your valid, legal and binding agreement, enforceable in accordance with its terms; (c) the execution, delivery and performance by you of this Contract does not (and will not) violate any applicable law or breach any order of court or other governmental agency, or of any undertaking you are a party to or by which you or any of your properties are bound; (d) you will comply with all applicable laws, ordinances and regulations; (e) upon execution of this Contract, we shall have good and marketable title to any trade-in equipment free and clear of all liens and encumbrances whatsoever, (f) all information you have given to us is true, accurate and complete; (g) since the date of the most recent financial information given to us, no material adverse change in your business, assets, or prospects has occurred; (h) you will promptly deliver to us such financial statements, reports and other information as we may request; (i) the Equipment was selected by you; (j) the Equipment (including all manufacturer manuals and instructions) has been delivered to, and examined by, you; (k) the safe operation and the proper servicing of the Equipment were explained to you; (l) you received the written warranty applicable to the Equipment and understand that your rights under the written warranty may be limited; (m) the Equipment is unconditionally and irrevocably accepted by you as being suitable for its intended use; (n) the Equipment is in good condition and repair (operating and otherwise); (o) the Equipment shall be used only for the purpose indicated herein, will remain in your possession and will not be sold, rented or leased; and (p) you will pay all taxes assessed on the Equipment.

Unless you are an individual, you also represent, warrant and covenant to us that: (a) you are and will remain duly organized, validly existing and in good standing under the laws of your jurisdiction of organization; (b) you are qualified to do business under the laws of all other jurisdictions where qualification is required or advisable; (c) you will not change your jurisdiction of organization or organization type without at least 30 days' prior written notice to us; and (d) the execution, delivery and performance by you of this Contract will not breach any provision of your organizational documents.

If you are an individual, you agree not to move your residence to a different county or state without at least 30 days' prior written notice to us.

13. Governing Law; Jurisdiction; Venue. THIS CONTRACT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF THE SELLER'S PLACE OF BUSINESS, WHERE THIS CONTRACT IS ACCEPTED AND ENTERED

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| DOC8002 | 8/2/2013 | Settlement Nbr: 11506030 | Equipment Type: Construction & Forestry Commercial | | |
|---|---|---|---|---|---|
| | | Application ID: 11506030 | Version Number: 7 | Customer Initials: L F | Page 4 of 6 |

Revision Date: September 2011



Exhibit 1
Page 4 of 6

INTO, except for its conflict of laws provisions. It is further expressly agreed that finance and origination charges will not be charged in excess of the highest rate specified in the laws of that state and that future adjustments will be made to avoid the payment of interest in excess of such limits.

You irrevocably submit to the non-exclusive jurisdiction and venue of federal and state courts located in Des Moines, Iowa and will not claim it is an inconvenient forum for legal action. YOU AND WE IRREVOCABLY WAIVE ANY RIGHT YOU AND WE MAY HAVE TO A JURY TRIAL.

14. Miscellaneous. WE HAVE NOT MADE, AND DO NOT MAKE, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE EQUIPMENT'S MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR OTHERWISE. WE ARE NOT LIABLE FOR CONSEQUENTIAL OR SPECIAL DAMAGES. You agree not to withhold any amount you owe us if you believe you have a claim against us, or any manufacturer(s) of the Equipment, but to pursue that claim independently. Any claim you have against us must be made within two years after the event that caused it. All notices must be in writing and will be deemed given 5 days after mailing to the intended recipient at its address indicated above, unless changed by a notice given in accordance with this Section. This Contract supersedes and replaces all prior understandings and communications (oral or written) concerning the subject matter thereof. No part of this Contract can be amended, waived or terminated except by a writing signed by both you and us. This Contract may be signed in separate counterparts that, together, will constitute one document. A paper or facsimile transmission copy of your signature or an electronic signature shall constitute an original signature under applicable law for all purposes. If a court finds any part of this Contract to be invalid or unenforceable, the remainder of this Contract will remain in effect. You permit us, and those third parties who provide services to us, to monitor and record telephone conversations between you and us. You agree that by providing us any telephone number, including a mobile phone number, we, any debt collector we retain, and those third parties who provide services to us, can contact you using that number, including calls using an automatic dialing and announcing device and prerecorded calls. All of our rights shall remain in effect after the expiration or termination of this Contract.

You and we intend to comply with all applicable laws. In no event will we charge or collect any amounts in excess of those allowed by applicable law. In the event any amount in excess of that allowed by law is charged or recovered, any such charge will be deemed limited by the amount legally allowed and any amount received by us in excess of that legally allowed will be applied by us to the payment of amounts legally allowed under this Contract, or refunded to you.

**THE TERMS OF THIS CONTRACT SHOULD BE READ CAREFULLY BEFORE SIGNING BECAUSE ONLY THESE WRITTEN TERMS ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES MAY BE LEGALLY ENFORCED. BY SIGNING THIS CONTRACT, YOU AGREE TO THE TERMS ON ALL PAGES. THIS CONTRACT IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN YOU AND US, EXCEPT AS WE MAY LATER AGREE IN WRITING TO MODIFY IT.**

**This written loan agreement represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties.**

**There are no unwritten oral agreements between the parties.**

FREDERICK TIMBER, LLC

Date Agreement Signed  8/5/13

PAPE MACHINERY, INC.
(Seller's Name)

By: _/s/ LF_  8/2/13
LUKE FREDERICK, Member  (Date Signed)

By: _BHayward_
(Seller's Signature)

X _/s/ LF_  8/2/13
LUKE FREDERICK, Individually  (Date Signed)

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| DOC8002 | 8/2/2013 | Settlement Nbr: 11506030 | Equipment Type: Construction & Forestry Commercial | Page 5 of 6 |
|---|---|---|---|---|
| | | Application ID: 11506030 | Version Number: 7  Customer Initials: LF | |

Revision Date: September 2011

Exhibit 1
Page 5 of 6

**If this contract is assigned to John Deere, the following form of assignment will be used.**

**ASSIGNMENT.** For value received, Seller hereby sells, assigns and otherwise transfers to John Deere Construction & Forestry Company ("Deere"), its successors and assigns, under the terms and conditions of the applicable Finance Agreement now in effect between Seller and Deere, all of Seller's right, title and interest in and to (1) this Retail Installment Contact, (2) all rights and remedies hereunder, (3) all Installment Payments and other amounts due and to become due hereunder, (4) all insurance proceeds and other proceeds, and (5) all Equipment subject hereto. This instrument is not an assignment of any Seller's obligations to the buyer of the Equipment. Seller authorizes Deere, its successors or assigns, to do every act or thing necessary to collect and discharge the same.

Date: 8/5/13     Dealer: PAPE MACHINERY, INC.     Signed by: BHayward

---

**THE TERMS OF THIS CONTRACT ARE CONTAINED ON MORE THAN ONE PAGE**

| 8/2/2013 | Settlement Nbr: 11506030 | Equipment Type: Construction & Forestry Commercial | | |
|---|---|---|---|---|
| DOC8002 | Application ID: 11506030 | Version Number: 7 | Customer Initials: LF | Page 6 of 6 |

Revision Date: September 2011



Exhibit 1
Page 6 of 6

Case 18-61640-tmr7    Doc 22    Filed 08/23/18